**MEMO ENDORSED**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  10/18/2018

# Abdul Hassan Law Group, PLLC
## 215-28 Hillside Avenue
## Queens Village, New York, 11427

~~~~

**Abdul K. Hassan, Esq.**                                          Tel: 718-740-1000
Email: abdul@abdulhassan.com                                       Fax: 718-740-2000
*Employment and Labor Lawyer*                              Web: www.abdulhassan.com

October 14, 2018

**Via ECF**

Hon. Valerie E. Caproni, USDJ
United States District Court, SDNY
40 Foley Square, Courtroom: 443
New York, NY 10007
Tel: 212-805-6350

> The Court finds that this settlement is fair and reasonable.  The parties' settlement is APPROVED.  This case is DISMISSED.  The Clerk is respectfully directed to terminate all open motions and to close the case.   SO ORDERED.
>
> *Valerie Caproni*    10/18/2018
>
> HON. VALERIE CAPRONI
> UNITED STATES DISTRICT JUDGE

**Re: Tanooli v. Distinctive Maintenance Company Inc.**
    Case No.  18-CV-04689 (VEC)(KHP)
    **Response to ECF No. 21**

Dear Judge Caproni:

      My firm represents plaintiff Haroon Tanooli ("Plaintiff" or "Tanooli") in the above-referenced action. As directed by the Court in its October 1, 2018 order, I respectfully write to supplement Plaintiff's motion for settlement approval (ECF No. 20), with the attached time records. (See Exhibit 1). We apologize for any inconvenience or delays in not submitting time records with the original motion for approval. I did not attach time records previously because my firm is receiving a 1/3 percentage fee instead of an hourly fee consistent with the retainer agreement[1]. (See Exhibit 2 ¶ 12). See *Kevin Lynch v. Consolidated Edison, Inc.*, Case No. 16-

---

[1] See *Venegas v. Mitchell*, 495 U.S. 82, 89-90 (1990). Plaintiff' Counsel's retainer rate is $600 and the retainer agreement with Plaintiff states in relevant part as follows:

    The amount of Attorney's contingency fee will be the greater of:
(a) A reasonable percentage fee which is one-third (1/3) of all sums recovered on Client's behalf; or

(b) A reasonable hourly fee which is the amount of Attorney's hourly rates as laid out below times the number of hours spent by the Attorney on Client's behalf; or

(c) A separate recovery of fees such as where a court or other tribunal awards attorney's fees or where a defendant(s) settles a demand for fees.

See *Brown v. Starrett City Associates*, 2011 WL 5118438, 8 (E.D.N.Y.), the court, citing *Venegas*, also noted that even when a court makes a lodestar fee award, "The award is then subject to whatever private contractual agreement exists between plaintiff and his or her counsel."

1

CV-1137, ECF No. 37 (Judge Furman author of *Wolinsky* - approving 1/3 fees of $14, 826 under *Cheeks*)("the Court sees no basis to reduce the fee where, as here, there are no opt-in plaintiffs, the case is not a collective action, and the attorney's fee award is based on an agreement between Plaintiff and his attorney."). the 1/3 contingency fee Plaintiff's counsel is due to receive in this case is reasonable because it is consistent with the retainer agreement and is probably the most common type of contingency fee in our legal system.

The dicta in *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015), about fees, appear to require "adequate documentation" to support a fee award in excess of 40 percent. See *Cheeks*, 796 F.3d at 206. While time records are one form of documentation and are relevant when the fee is an hourly one, the most important documentation in terms of fees, is the retainer agreement which in this case provides for a 1/3 fee that does not depend on hours expended. (See Ex. 2 ¶ 12, and footnote 1). In *Venegas v. Mitchell,* 495 U.S. 82, 89-90 (1990), the Supreme Court stated in relevant part as follows:

> But neither Blanchard nor any other of our cases has indicated that § 1988, by its own force, protects plaintiffs from having to pay what they have contracted to pay, even though their contractual liability is greater than the statutory award that they may collect from losing opponents. Indeed, depriving plaintiffs of the option of promising to pay more than the statutory fee if that is necessary to secure counsel of their choice would not further § 1988's general purpose of enabling such plaintiffs in civil rights cases to secure competent counsel.

In reaching the conclusion that § 1988 does not govern retainer/fee agreements between plaintiffs and their attorneys, the Supreme Court focused on the obvious text of the statute which by its plain and unambiguous terms, deals with fees a defendant must pay a prevailing plaintiff. In *Venegas*, 495 U.S. at 86–87, the Supreme Court stated in relevant part as follows:

> The section by its terms authorized the trial court in this case to order the defendants to pay to Venegas, the prevailing party, a reasonable attorney's fee. …But there is nothing in the section to regulate what plaintiffs may or may not promise to pay their attorneys if they lose or if they win.

Similarly, by its plain and unambiguous terms, the FLSA's fee provision deals with fees a defendant must pay a prevailing Plaintiff – not fees that a plaintiff must pay his attorney - under a retainer agreement for example. 29 U.S.C. § 216 ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").

---

See also *Millea v. Metro-N. R. Co.*, 658 F.3d 154 (2d Cir. 2011) ("The whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery. Thus, the district court abused its discretion when it ignored the lodestar and calculated the attorneys' fees as a proportion of the damages awarded."). *Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132 (2d Cir. 2008) (Second Circuit affirming about $49,000 in fees under the FLSA where the damages and liquidated damages were about $1800).

2

The distinction between fees a defendant is obligated to pay a prevailing plaintiff under the statute and the fees that a plaintiff is obligated to pay his attorney under a retainer, is a distinction that a unanimous Supreme Court in *Venegas* understood and recognized but one which most lower courts appear not to be aware of. This is likely because courts are more accustomed and familiar with the fee-shifting lodestar standard, and before *Cheeks*, were not called upon to examine the fees paid by a plaintiff to his attorney. Even if they haven't done so before, courts should address this distinction especially because it is a distinction that was made by the highest Court in the land and on a unanimous basis. See also, *Hensley v. Eckerhart*, 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ("The standards set forth in this opinion [construing § 1988] are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'"). *Smith v. Nagai*, 2012 WL 2421740, 5 (S.D.N.Y., 2012) ("In determining the [FLSA fee] award, courts utilize the analytical framework for civil rights cases under 42 U.S.C. § 1988."). *Ayres v. 127 Restaurant Corp.*, 1999 WL 328348, at *1 (S.D.N.Y., 1999); ("the law on attorney's fees is no different in FLSA cases than it is in employment discrimination cases"), aff'd, 201 F.3d 430 (2d Cir.1999).

In *Mares v. Kim*, No. 15 CIV. 7197 HBP, 2016 WL 4098408, at 2 (S.D.N.Y. July 25, 2016), the court stated in relevant part as follows:

> As described in *Cheeks*, the purpose of the FLSA is to regulate the relationship between an employee and his employer and to protect the employee from over-reaching by the employer. 796 F.3d at 206. I do not understand the FLSA to regulate the relationship between the employee as plaintiff and his counselor to alter the freedom of contract between a client and his attorney.

Indeed, *Cheeks* is fully consistent with *Venegas* and did not change settled FLSA fee jurisprudence - fees were not at issue in *Cheeks* as the appeal was taken before any settlement review occurred. To the extent dicta in *Cheeks* about legal fees control, *Cheeks* did not put a cap on fees and merely required courts to ensure that the fees do not violate existing FLSA fee jurisprudence – including *Venegas*. See *Flores v. Steinway Dental Laboratory Inc. et al*, Case No. 15-cv-04364 (Judge Mauskopf - EDNY 02/14/2017) (Noting in *Cheeks* approval order that "An attorney's fees pursuant to a retainer agreement may exceed the lodestar due to the client under a fee-shifting statute. Venegas, 495 U.S. at 89–90.").

A court can examine fees under *Cheeks* to determine whether the fees comply with the retainer agreement, but a court does not have authority under the FLSA or *Cheeks* to invalidate a retainer agreement/contract between a plaintiff and his attorney. The Supreme Court in *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945) and *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 (1946), as well as the Second Circuit in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), have held that an agreement between employer and employee waiving FLSA wages or rights is invalid or unenforceable. However, borrowing from the Supreme Court in *Venegas* 495 U.S. at 87:

3

it is a mighty leap from these propositions to the conclusion that [the FLSA] also requires the District Court to invalidate a contingent-fee agreement arrived at privately between attorney and client.

The following example will further and compellingly demonstrate that it is erroneous not to use the retainer agreement to determine fees owed by Plaintiff to his attorney. In this regard, assume that the lodestar fee is $50 but the retainer fee is $20 – using the lodestar standard to determine fees the Plaintiff must pay to his attorney, will improperly deprive the plaintiff of $30 because he only agreed to pay his attorney $20 under the retainer agreement. Similarly, as the Supreme Court explained in *Venegas*, "it is the party, rather than the lawyer, who is so eligible" for fees under a fee-shifting statute like the FLSA – a court must therefore rely on the retainer and not the statute in order to determine the fees that a plaintiff/client must pay his attorney.

For the many compelling reasons explained by the Supreme Court in *Venegas*, a retainer fee is not unreasonable merely because it is higher than fees that would be awarded in a fee application under a fee-shifting statute like the FLSA. For example, in *Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 26 (N.D.N.Y. 2015), Mr. Paul Clement, the well-respected Supreme Court litigator, had a retainer rate of $1100 an hour but was awarded only $300 an hour following a fee application in that fee-shifting civil rights case. However, that the fee-shifting rate the defendant had to pay was $300, does not mean that the $1100 rate the civil rights plaintiff in that case agreed to pay Mr. Clement was unreasonable or unconscionable– I think most people would agree that an $1100 an hour fee is not unreasonable or unconscionable for someone of Mr. Clement's skill, reputation and experience, if his client agreed to pay him that. In one of my recent FLSA cases, the lead defense attorney was charging $730 an hour, even though he has litigated far less than half the more than 400 employment/FLSA cases I have litigated in federal court. See *Young v. Joy Construction Company Inc.* et al, Case No. 15-cv-02642, ECF No. 41-3. Also, in *Cohen v. Gerson Lehrman Grp., Inc.*, No. 09 CIV. 4352 PKC, 2011 WL 4336677, at fn 2 (S.D.N.Y. Sept. 15, 2011), the lead plaintiff's attorney in that FLSA case was charging $750/hr. In fact, in *Gonzalez v. Scalinatella, Inc.,* 112 F. Supp. 3d 5, 26–27 (S.D.N.Y. 2015), the Court noted that "in 2012 a court in this district approved a $550.00 rate for a mid-size firm partner in an FLSA case (Outten & Golden) ... and the Second Circuit subsequently affirmed that decision." The court in *Gonzalez* 112 F. Supp. 3d at 26–27, also noted that another plaintiff's attorney in an FLSA case was awarded $600/hr.

In any event, the hourly fees based on the attached time records (Ex. 1), are $24,210 at the retainer rate of $600/hr for 40.35hrs (See footnote 1), or $18,157.50 at a reduced fee-shifting rate of $450/hr. See *Almond v. PJ Far Rockaway, Inc.*, 2018 WL 922184, at 1 (E.D.N.Y. Feb. 15, 2018) (awarding Mr. Hassan a 450/hr rate in the context of a fee-shifting fee application and noting that "Hassan has been practicing law since 2001 (17 years) and has litigated over 400 employment and wage cases in federal court. He has argued a number of significant employment cases before the Second Circuit."); *De Fabio v. QualityPro Pest & Wildlife Services Inc. et al*, 15-cv-09483, ECF No. 38, (Judge Karas-SDNY) (finding that an hourly rate of $450 an hour for plaintiff's counsel herein is 'reasonable considering Plaintiff's counsel "ha[s] litigated over 350 employment/wage cases in New York's federal courts since 2001'").

4

Here, Plaintiff's counsel is receiving a lower 1/3 contingency fee of $13,179 after reimbursement of $463 in costs. (Ex. 1 ¶ 2(c)). Plaintiff's counsel has received similar or higher legal fees in other FLSA settlements approved by courts. See *Persaud v. Consulate General of Guyana in New York et al*, Case No. 16-cv-01755 (Magistrate-Judge Peck - SDNY)(approving 1/3 fees of $23,080 under *Cheeks*); *Bumagin v. The Mount Sinai Medical Center, Inc.* et al, Case No.16-cv-08783, ECF No. 40, (SDNY – Judge Gorenstein)(1/3 fee of $14,000 under *Cheeks*); *Rivera v. Golden Krust Caribbean Bakery Inc.*, Case No. 16-cv-09219 (Magistrate-Judge Pitman) (1/3 fee of $16,666 under *Cheeks*); *Andrea Carter v. Long Island Care Center, Inc.*, Case No.15-cv-4058 (PKC)(VMS), (February 19, 2016 text only order – 1/3 fee under *Cheeks* of about $27,000); *Hosein v. Universal Elevator Inc. et al,* Case No. 17-cv-07597-(Judge Cogan)(approving a 1/3 percentage fee of $16,995 under *Cheeks*); *Hysa et al v. Midland Electrical Contracting Corp. et al*, Case No. 13-CV-6837 (Chief Magistrate-Judge Mann, January 2016 - approving 1/3 fee of $103,607.94); *Gosyne v. Ace Inspection and Testing Services Inc. et al*, Case No. 17-CV-07364 (Magistrate-Judge Reyes - EDNY July 19, 2018)(approving a 1/3 fee of $14,700 under *Cheeks*); *Jones v. Bryant Park Market Event LLC*, 13-CV-1369, ECF Entry of 10/24/2016 (AJP - SDNY)(approving $4,000 in damages and $55,000 in fees and costs under *Cheeks*); *Kirkland v. ASA College, Inc. et al*, 16-cv-02908 (Magistrate-Judge Levy – EDNY)(1/3 fee of $12,978 under *Cheeks*).

The issue of whether the FLSA which regulates the employer-employee relationship, is a legal basis for invalidating an otherwise valid contract between an attorney and his client, is ripe for certification to the Second Circuit pursuant to 28 U.S.C. 1292(b), at the right time. After *Cheeks*, court have differed substantially on the issue – as explained above, some courts award a percentage fee based on the retainer agreement while others utilize a lodestar standard – others mix and match. A resolution would materially advance the ultimate termination of litigation – allowing for disposition through settlements rather than continued litigation if the settlement is rejected.

I have taken the time to elaborate because I am sure that both the bench and bar have a genuine desire to get it right and to apply the correct legal standard – as opposed to multiple conflicting fee standards by many judges which by definition cannot all be correct. It is also the job of the attorneys to provide the Court with the necessary briefing – it appears that a lack of such proper briefing to this point, may be the main reason why the points and authorities herein have not been substantively addressed by more judges in the Second Circuit.

We thank the Court in advance for its time and consideration.

Respectfully submitted,

Abdul Hassan Law Group, PLLC

 /s/ Abdul Hassan
By: Abdul K. Hassan, Esq. (AH6510)
*Counsel for Plaintiff*

cc:     **Defense Counsel via ECF**